1    Robert J. Large; Pro Se
      6331 N. 3rd Street
2    Phoenix, AZ 85012
      (602) 708-9950

3

4

5

6             **UNITED STATES DISTRICT COURT**
                  *for the*
7              **DISTRICT OF ARIZONA**

8                **CIV'11 1127 PHX GMS**

    ROBERT J. LARGE;          )    Case No.: _____
9
         Plaintiff,         )    COMPLAINT FOR DAMAGES FOR:
10                     )       1. Violations of Federal Fair Labor
      vs.              )          Standards Act;
11                     )       2. Reimbursement for Expenses
    STEVEN J. HILTON;       )       3. Unpaid Vacation Pay
12                     )       4. Unlawful Withholding of Wages
    SUZANNE M. HILTON;     )       5. Failure to pay within 3 days
13                     )       6. Theft of Services in AZ
                           7. Theft of Services in UT
14                          8. Theft by Extortion in AZ
          Defendants.            9. Fraudulent Schemes—Unfair
15                             Advantage
                      10. Aiding and Abetting Tort Conduct
16                     11. Fraudulent Schemes—Tax Fraud
                    12. Fraudulent Schemes—Deceiving
17                        Government
                    13. Blacklisting in AZ
18                     14. Defamation by Slander
                    15. Intentional Infliction of Emotional
19                        Distress
                    16. Criminal Liability
20                    DEMAND FOR TRIAL BY JURY

21

22    Plaintiff; ROBERT J. LARGE (hereinafter referred to as the "Plaintiff") brings this civil action

23    against Defendants STEVEN J. HILTON and SUZANNE M. HILTON, and alleges:

24                        **NATURE OF CLAIM**

25    01.     This is an action on behalf of ROBERT J. LARGE who was an employee of the

26    Defendant; STEVEN J. HILTON and the Defendant; SUZANNE M. HILTON from April

27    2, 2007 until September 22, 2010.  The Plaintiff is seeking damages arising from his

28    employer's failure to pay overtime as required by the Fair Labor Standards Act and

violations of both Arizona and Utah Criminal Code Statues.  Plaintiff seeks damages for unpaid wages under AZ and UT laws pertaining to labor; as defined by each States Statues, overtime and liquidated damages under 29 U.S.C. section 216(b), other damages for civil wrongs against the Plaintiff and attorney's fees(if used), court costs and interest earned on said damages.

02.     Plaintiff brings this action on behalf of himself pursuant to 29 U.S.C. section 216(b) and 29 C.F.R. Ch. 5; Sec. 552.100; Application of the Fair Labor Standards Act to Domestic Service.

## PARTIES

03.     The parties of this complaint are the Plaintiff; Robert J. Large as the employee and the Defendants STEVEN J. HILTON and SUZANNE M. HILTON (husband and wife) as the employers.

04.     At all times relevant herein, the Plaintiff's main residence is in Maricopa County; Phoenix, AZ.

05.     At all times relevant herein, the Defendants; STEVEN J. HILTON and SUZANNE M. HILTON have their main residence in Maricopa County; Scottsdale, AZ and a secondary 'cabin' in Park City, Utah.  The Defendants are husband and wife and live under the same dwelling(s).

06.     According to the documents from the USDOL acquired from a FOIA Request (FLSA NARRATIVE); the Defendants are 'co-employers; involved together in this action.  Attached as Exhibit "J"

07.     Individual Defendant; STEVEN J. HILTON is the Chairman and CEO of the publically traded Meritage Homes Corp; the Defendant is on the Board of Directors for another publically traded corporation, a Partner for a professional basketball team and co-owner with his wife of a burger shop in Scottsdale, AZ.  The Defendant had control of the Plaintiff's working conditions and work situations.

08.     The working relationship between the parties existed from 04/02/07 until 09/22/10.  Further email activity between Plaintiff and Defendants up thru 05/01/11.

09.     The Plaintiff was originally hired for landscaping, detailing and private driving of the Defendants. It's thru the Defendants actions and willingness to take advantage of the Plaintiff and abuse our mutually agreed upon agreement that this Civil Complaint is taking place.

10.     The Plaintiff tried to go the route of the United States Department of Labor but the Defendants 'offer of settlement' was not even close to what is actually owed due to incorrect calculations, so the Plaintiff chose not to accept the offer and bring this Complaint myself to protect my rights as an American taxpaying citizen.

## JURISDICTION

11.     This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. 1331 as Plaintiff's charges are based on, in part, the Federal Fair Labor Standards Act, as well as the pendant jurisdiction of this court under 28 U.S.C. 1367 as all claims within this Complaint are related.

## VENUE ASSIGNMENT

12.     The Arizona District Court is the proper venue for this action as the majority of the events giving rise to this action have occurred in Maricopa County, a county served by the District Court of Arizona.

## GENERAL ALLEGATIONS

13.     This is a very simple, non-complex suit brought by an ex-employee and Plaintiff ROBERT J. LARGE against ex-employer and Defendants STEVEN J. HILTON (husband) and SUZANNE M. HILTON (wife).

14.     The Plaintiff is bringing this suit Pro Se in accordance with 'Equal Protection of the Law'.

15.     Most of all evidence will be the Defendant's and the Plaintiff's own words and/or actions to the words. Other evidence will be from files from the USDOL and from a FOIA Request; contractors working at the Defendants residences, photos of properties maintained by the Plaintiff and letters of references from various people knowing the quality of work the Plaintiff provided the Defendants.

16.     The Plaintiff has collected every email sent from the Defendants since before I was hired (03/31/07) until the last email send back to the Defendant on 05/01/11.  The Plaintiff has close to 4,000 emails.

17.     Plaintiff also has communications between himself and Mr. Gene Bearinger concerning his purchase of a brand new 2007 Signature L-series Town Car in November 2006.  Car was purchased for the Plaintiff.

18.     In March 2007,  STEVEN J. HILTON called the Plaintiff and asked me to come to work for him at his newly constructed 22,000 sq.ft. house in Silverleaf; DC Ranch; Scottsdale, AZ.

19.     At that time the Plaintiff was a driver for ExecuCar of Phoenix.  I drove a brand new 2007 Signature L-Series Town Car that was purchased for me by my friend and client; Mr. Gene Bearinger.  My personalized license plate was 'NVRDRTY' as a showing of my skills in vehicle detailing.

20.     During the phone conversation withSTEVEN J. HILTON, he asked if I owned a vehicle and I; the Plaintiff, answered, "No. Gene bought me this Town Car and I have it 24/7.  I haven't owned a vehicle in 5 years."  STEVEN J. HILTON told me that he would buy a black Cadillac ESV and it would be my company vehicle.  The Defendant also asked me if I had health insurance and once again, I told him, 'No.' STEVEN J. HILTON said that he would provide me with health insurance as well.

21.     A meeting was set up for 3pm on March 31, 2007 to discuss and solidify our working relationship.

22.     The Plaintiff brought a typed 'proposal' to the meeting offering my skills in landscaping, vehicle detailing and my many years as a professional driver for a yearly salary of $50,000.  STEVEN J. HILTON and I; the Plaintiff came to an oral agreement of a 40 hour workweek and a yearly salary of $42,500.  Exhibit "A"

23.     STEVEN J. HILTON expressed to the Plaintiff that he didn't want to get commercial livery insurance on the vehicle.  Both came to the agreement that the Plaintiff would not use the company vehicle to drive 3rd party people.

24.     STEVEN J. HILTON also said that there would be times when he needed the vehicle for family use and in that, the Defendant would have a truck parked at the hanger he was building at the Scottsdale Airpark. I was to drop off the ESV and drive the truck when he needed the ESV. I would give back my 2007 Signature L Town Car to Gene Bearinger and get a newer, nicer company vehicle.

25.     STEVEN J. HILTON also mentioned that in addition of purchasing the ESV for me, he was also buying the live-in nanny a Land Rover…which he did indeed do.

26.     A copy of my proposal and handwritten notes as to our agreement is attached as Exhibit "A". We walked the property and shook hands on our deal.

27.     On April 13, 2007, Mr. Gene Bearinger told me that I had to return the Town Car to him. I was standing on the upper deck of the Defendant's home when he arrived. I told STEVEN J. HILTON that I had to give the Town Car back to Gene over the weekend. The Defendant said he would start looking.

28.     On April 14, 2007, the Plaintiff drove to every Cadillac dealer in the Phoenix area to price shop new ESV's. Plaintiff sent the Defendant an email; "Did some 'leg work' on ESV's" and STEVEN J. HILTON responded back by email on 04/15/07 and said in part, "What's cookin with your car situation – if you need some help, let's talk!"

29.     This was the first of many moves of bad faith and unfair advantage taken by STEVEN J. HILTON in regards to our agreement.

30.     The morning of 04/23/07, STEVEN J. HILTON verbally offered to give me a $10,000 loan to get a quote "older model truck."-end quote

31.     While at work on 04/23/07, the Plaintiff wrote and printed a hand-delivered draft to STEVEN J. HILTON expressing my concerns that our agreement had changed and it had put me in a very tight spot…unfairly so. STEVEN J. HILTON arrived home before I was finished working and we discussed coming to a solution for this. Attached as Exhibit "B"

32.     During verbal discussions in the Defendants 3,000 sq.ft. garage, STEVEN J. HILTON told me to go find a truck and he would help resolve our dispute. I was using my roommate's old beat up 1980 Subaru to go the 27 miles to work and back home. It was a

1    major downgrade from the 2007 Signature L Town Car the Plaintiff gave up to take this

2    'too good to be true' offer from STEVEN J. HILTON.

3    33.    The morning of 04/25/07, when the Plaintiff arrived at work, the Defendant apologized

4    for not being available to go check out a truck I had found.  STEVEN J. HILTON then

5    handed me a 'trust-fund check' in the amount of $20,000 and said to find a truck I was

6    happy with.  He said to shop around and make sure because it would be my truck.

7    34.    On 04/26/07, the Plaintiff purchased a 2004 black on black Dodge Ram Quadcab with

8    less than 23K miles on it from Greg Wolff of Paradise Valley, AZ.  Purchase price of the

9    truck was $17,900.

10   35.    On 06/22/07, the Plaintiff received an email from SUZANNE M. HILTON in regards to

11   them getting me dental insurance.  Her reply was that 'that is not included, even Amy (live-

12   in nanny) doesn't have it included'.

13   36.    The original agreement for employment really began changing for the worse in August

14   '07.  Not only did I have to do my landscaping and detailing but I was now required to do a

15   lot of extra work…and not get paid overtime for the growing number of hours it was taking.

16   Attached is email "RE: Performance review on 08/29/07" as Exhibit "C"

17   37.    On 10/01/07, STEVEN J. HILTON was in the garage when I arrived for work.  He told

18   me that they; STEVEN J. HILTON and SUZANNE M. HILTON were going to start

19   deducting $300 per month out of my paychecks to repay the 'truck loan.'  SUZANNE M.

20   HILTON set it up with the payroll service; Breedlove & Assoc. out of Texas to take $150

21   per pay period out of my checks.  The Defendants changed my 'gross pay' to a lower

22   amount; in effect cheating me out of wages/taxes but also cheating all branches of

23   government due to taxes upon wages earned.  Attached as Exhibit "D"

24   38.    In an email from SUZANNE M. HILTON on 01/30/08, the Plaintiff was informed that I

25   was now required to do the landscape maintenance on the Defendants 2nd home.  A 6,000

26   sq.ft. house.  Once again no overtime, just a lot more work.

27

28

39. Because so much more was being dumped on me, STEVEN J. HILTON asked for a 'log of daily activities (email "RE: What Robb did all day Monday…as per your request!!!! (06/02/08)"

40.     November 2008 the Plaintiff was required to fly up to the Defendants cabin in Park City, Utah to oversee the re-construction inside the 8,000 sq.ft. 'cabin'.  Email between Marie Muller; Executive Secretary to STEVEN J. HILTON at Meritage Homes Corp., shows that once again the Plaintiff was doing way more that what he was being paid for.  Email "Robb's return from Utah" 11/07/08

41.     Because of the overload of work being forced upon the Plaintiff, STEVEN J. HILTON constantly belittled me and used threats to keep me working.  Email "RE: Ignored?" 02/11/09.  Exhibit "E"

42.     In an email on 06/08/09, STEVEN J. HILTON once again took me off the things I was getting paid for to insist I do his 'list.'  Email (No Subject).

43.     SUZANNE M. HILTON responded to me working just under 111 hours in 8 straight days.  Email attached "RE: Completed work in Utah" 08/18/09 as Exhibit "F"

44.     The Defendants NEVER PAID ANY OVERTIME, in AZ or in UT.  Payroll records will be presented.  Plaintiff's income never increased; no raises ever…only went down when they made me pay for my company vehicle and out-of-pocket expenses to cover their activities.

45.     An email on 10/10/09 "RE: Completed work in Utah" shows the abusive nature of STEVEN J. HILTON when replying to the Plaintiff.

46.     Once again STEVEN J. HILTON threatens to fire me for complaining about a safety issue on doing one of his projects. Email: "RE: RobbReport 01/05/10" Exhibit "G"

47.     Mean and evil words were verbally spoken to the Plaintiff by STEVEN J. HILTON and in an email the Plaintiff tries to share his feelings of being upset and hurt by STEVEN J. HILTON'S words. Email: RE: Wednesday morning got me thinking" 03/22/10  Exhibit "H"

48.     After our working relationship was cancelled by STEVEN J. HILTON, I asked him for my vacation pay...He refused.  Email titled "Re: Last paycheck' 10/06/10

49.     Plaintiff has all emails between himself and the USDOL.  Plaintiff also has the 'Investigation File for STEVEN J. HILTON from a FOIA Request.  Attached as Exhibit "J"

50.     On March 11, 2011, the Plaintiff signed a contract and a non-disclosure agreement with the International Domestic Placement Group out of Beverly Hills, CA and Mr. Craig Jackson of Paradise Valley, AZ.  I was...'was' being the key word...the choice of Mr. Craig Jackson for hire to become his House Manager.  Because of a crime being committed against the Plaintiff, I relinquished the non-disclosure to show A.R.S. 13-302; 13-303; 23-2310 and 23-2311.  Attached as Exhibit "Q"

51.     Mr. Jackson had business out of State that delayed us moving forward.  On 04/25/11, the Plaintiff called Mark from I.D.P.G. to inquire about moving forward.  Mark called Mr. Craig Jackson and Mr. Jackson told Mark, "Robb Large is tainted.  The Hilton's say he hurt one of their children and I don't trust him around my son."

52.     Plaintiff has emails to the I.D.P.G. and Mr. Jacksons Executive Secretary; Laura Purifoy from Barrett-Jackson Auctions, trying to defend my good name and restore my reputation.

53.     The Defendants along with Mr. Craig Jackson have committed Blacklisting against the Plaintiff as defined in A.R.S. 1362(A)(B) as defined in 13-1361(A).  Thou there are third party laws (A.R.S. 13-303) that could affect Mr. Jackson, the Plaintiff will take no such action against him.  We were both defrauded by the extreme and outrageous lies and conducts of the STEVEN J. HILTON and SUZANNE M. HILTON.

54.     The Plaintiff received an email from STEVEN J. HILTON on 05/01/11.  The Defendant 'suggests' that the Plaintiff owes him for a 'truck loan debt'...then threatens legal action if I don't do what he wants and not file this suit.  STEVEN J. HILTON has opened the door for the Plaintiff to defend and prove my original oral agreement made on 03/31/07.  The Plaintiff will prove STEVEN J. HILTON used fraudulent schemes against the Plaintiff before the agreement.  In accordance with A.R.S. 13-2310, the Plaintiff will show that the Defendants didn't pay the correct tax (Federal, State, FICA and S.S.)(A.R.S. 43-414; 43-

416; 43-435; and A.R.S. 23-352; 26 U.S.C. 7202 and 7206) on the Plaintiff's agreed upon amount because the Defendants concealed my gross yearly amount by $150 per pay-period. And then to abuse the taking of the Plaintiff's wages even more…on 6 occasions the Defendants took $450 per month for their unlawful withholding of wages.

55.     Though the Statues of Limitations HAD expired as far as going back to the original agreement on 03/31/07, the Plaintiff is not challenging the oral agreement.  The Plaintiff is showing that from BEFORE the original agreement; the Defendants willfully and with intent of an unfair advantage and with fraudulent schemes in mind, changed the agreement at will to benefit themselves.

56.     The Plaintiff will also show STEVEN J. HILTON fraudulently lied to the Phoenix Office of the USDOL about his knowledge of the hours the Plaintiff was working. (A.R.S. 13-2311)  From the FOIA Request, the Plaintiff has the document that proves this beyond a reasonable doubt.  I also have proof that STEVEN J. HILTON fraudulently lied to the Arizona Department of Economic Securities concerning payment of 'vacation pay' in accordance with A.R.S. 23-353.

57.     The Defendant; STEVEN J. HILTON is the Chairman and CEO of Meritage Homes Corp and sits on the Board of Directors for Western Alliance Bancorporation.  So in accordance with A.R.S. 13-204, STEVEN J. HILTON can not claim that he didn't know.

58.     STEVEN J. HILTON should be held at a 'higher standard' because in both companies 'Code of Ethics', STEVEN J. HILTON is listed as a person of knowledge when it comes to fraudulent behavior.

59.     As Robert Sarver (CEO of Western Alliance Bancorporation and owner/Managing Partner for the Phoenix Suns) friend and business partner of STEVEN J. HILTON said in a speech on May 18, 2005:

60.     "…I've got five values that run my business world…Number three, honesty and integrity.  In the future you're going to be faced with opportunities where, if you sacrifice your ethics, you can gain some kind of reward.  Don't do it.  There is no amount of money.

1   There is no amount of money in the world that would ever make me do anything dishonest

2   and unethical…" *www.nba.com/suns/news/sarver_ua_050518.html*

3   61.     Attached as Exhibit "I" partial Code of Ethics for both Meritage Homes Corporation and

4   Western Alliance Bancorporation.

5   **FIRST CAUSE OF ACTION**

6   **(Violation of the Fair Labor Standards Act**

7   **Failure to Properly Pay Overtime Wages)**

8   62.     Plaintiff re-alleges and incorporates paragraphs 1-61 as if fully stated herein.

9   63.     Plaintiff is covered by the FLSA as determined by the USDOL in the FLSA Freedom of

10   Information Act acquired by the Plaintiff.  Coverage is explained in the document "FLSA

11   NARRATIVE" Attached as Exhibit "J"

12   64.     The Defendants were employers for the Plaintiff/employee from 04/02/07 till 09/22/10.

13   The Defendants never paid any overtime as required by  the Plaintiff's non-exempt status

14   under the FLSA as a Domestic Service Worker.

15   65.     The 'Computation Methodology' done by the USDOL is incorrect.  Based on the words

16   in 29 U.S.C. Ch. V; Subch. B; Part 778; subpart b; 778.114 as used by the USDOL that

17   states: "Where there is a clear mutual understanding of the parties…"  The correct

18   'Computation Methodology' should be: 29 U.S.C. Part 548; Subpart B; 548.500 Example 2.

19   Attached Exhibit "K" Email: "Facts of FLSA LAWS…04/11/11

20   66.     The FLSA laws that govern 'Domestic Service Workers' state that for all hours over and

21   above 40 in a week…one and one half rate shall be paid. 29 U.S.C. 207(a)(l) and 29 U.S.C.

22   Ch. 5; Sec. 552.100 Application of the Fair Labor Standards Act to Domestic Service.

23   67.     Based on time records recorded by the Plaintiff & USDOL Wage Sheet, the Plaintiff is

24   owed 623.25 hours of overtime if going back 2 years from the filing of this action: 06/07/11

25   thru 06/06/09.  Plaintiff's yearly salary $42,500, so Plaintiff's hourly rate is $20.43 with an

26   overtime rate of $30.63.

27   68.     Defendants intentionally, with reckless disregard for the responsibilities imposed by the

28   FLSA, and without good cause, failed to pay Plaintiffs non-exempt employees' proper

1    wages, and thus making Defendants liable to the Plaintiff for liquidated damages in an

2    amount equal to lost overtime wages, pursuant to 29 U.S.C. 216(b) of the FLSA.

3    69.    Defendants therefore must pay to Plaintiff as non-exempt employee overtime amounts

4    heretofore not properly paid, in the amount of $19,090.15 plus liquidated damages of equal

5    amounts; for a total of $38,180.30.

6    70.    Damages to include attorney fees (when used), court costs and Defendants must pay all

7    back taxes and penalties related to the actual amount of non-payment of overtime as per

8    A.R.S.43-414

9                            **SECOND CAUSE OF ACTION**

10                           **Reimbursement for Expenses**

11   71.    Plaintiff re-alleges and incorporates all preceding paragraphs 1-70 as if fully stated

12   herein.

13   72.    With the numerous changes to the Plaintiffs and Defendants agreement…by the

14   Defendants to take advantage of the Plaintiff, I sent STEVEN J. HILTON a breakdown of

15   my 'Monthly Expenses February 2010'.  As it states in his email reply to the Plaintiff, "It's

16   a condition of employment to have your own phone at your own expense."

17   73.    The Plaintiff's monthly expenses for February 2010, not reimbursed by the Defendants

18   were: $194.88.  This is a violation of 29 U.S.C. 778.217 as the email shows, they were

19   expenses covered by the Plaintiff/employee for the benefit of the Defendants/employer and

20   as such the Defendants are required to reimburse the employee.  Email: Sent to USDOL

21   03/04/11 attached as Exhibit "L"

22   74.    Defendants therefore must pay to Plaintiff, that actual damages be determined for all 41

23   months of employment by the Defendants in the amount of $7,990.08.  Plaintiff should also

24   be awarded punitive damages as determined at the trials end.

25                            **THIRD CAUSE OF ACTION**

26                           **Unpaid Vacation Pay**

27   75.    Plaintiff re-alleges and incorporates all preceding paragraphs 1-74 as if fully stated

28   herein.

76.     The Defendants failed to follow A.R.S. 23-350 by not paying the Plaintiff his due wages (vacation pay) within 3 working days after termination.  STEVEN J. HILTON responded to an email that 'he was not going to pay me vacation time...' therefore in accordance with A.R.S. 23-355 the Plaintiff is due payment of treble damages plus interest.

77.     In letter from the Arizona Department of Economic Securities, STEVEN J. HILTON knowingly lied to the D.E.S. in saying that he had paid the Plaintiff $980.64 for vacation pay.  Attached email: 'Re: Last paycheck 10/06/10' as Exhibit "P"

78.     The Plaintiff appealed this letter and won via a phone pleading as I proved to that Court, as I will prove to this Court that STEVEN J. HILTON fraudulently lied in yet another attempt to deprive the Plaintiff of money I lawfully earned.

79.     So treble damages are $2,941.92 plus interest to be awarded for failing to follow the A.R.S. 23-350 code.  Attached letter from AZ DES Exhibit "N"

## FOURTH CAUSE OF ACTION

### Unlawful Withholding of Wages

80.     Plaintiff re-alleges and incorporates all preceding paragraphs 1-79 as if fully stated herein.

81.     STEVEN J. HILTON informed the Plaintiff on the morning of 10/01/07 that the Defendants/employers were going to start taking $150 per pay-period out of the Plaintiff's pay to 'repay' them for purchasing the truck for me.  From the email; Exhibit "A"; you see that the Defendant's original obligation from our meeting on Saturday, March 31, 2007...included a company vehicle.  Our original employment agreement was made in good faith or so I thought.  Attached as Exhibit "A"

82.     I have all emails and hand-delivered drafts between the Defendants and the Plaintiff.  I will use these communications to prove beyond a shadow of a doubt that the Defendants own words and actions and that the Defendants changed our agreement on numerous occasions and gave themselves an unfair advantage over the Plaintiff.

83.     I received an email from STEVEN J. HILTON on 05/01/11 that outlines that the Defendants were taking $300/mo out of my pay.  What the Defendants don't realize is that

1   SIX TIMES.they took $450/mo out of Plaintiffs pay due to there being 3-pay-periods in a

2   single month.  Attached as Exhibit "O"

3  84.   This action is a clear violation of A.R.S. 23-352(1)(2)(3) Withholding of wages.  No

4   State or Federal reason; No prior written authorization; Just bad faith.

5  85.   A.R.S. 23-352 plainly gives 3 reasons how money can be taken out of an employees pay.

6   The Defendants knowingly and with intent, chose of their own free will to take an unfair

7   advantage over the Plaintiff.  Defendants skimmed this money to avoid paying taxes on the

8   full amount of our agreement.

9  86.   The Plaintiff demands to be awarded all illegally taken money (wages) plus interest be

10   paid back and that the Defendants pay all back taxes and penalties.  According to the FOIA

11   Request records there were a total of 79 violations of A.R.S. 23-352 that equal $11,850.00

12   illegally taken for the benefit of the Defendants.  This is the actual damages minus interest.

13  87.   Plaintiff request that the court award Plaintiff with punitive damages in an amount

14   appropriate to punish Defendants and deter others from engaging in similar conduct.

15  88.   Plaintiff also seeks interest to be applied at the maximum rate; attorney fees(if used) and

16   all costs of this action for equitable relief, including but not limited to a court issued order

17   of 'business prohibition' against the Defendants as an exampulary damages.

18  89.   The Defendants should also pay all back taxes as defined by A.R.S. 43-414 Liability for

19   failure to withhold

20          **FIFTH CAUSE OF ACTION**

21          **(Failure to Pay Within 3 Days)**

22  90.   Plaintiff re-alleges and incorporates all preceding paragraphs 1-89 as if fully stated

23   herein.

24  91.   The Defendants/employers failed to follow A.R.S. 23-353(A) by not paying the

25   Plaintiff/employee his due wages within 3 working days after termination.

26  92.   The Defendants waited until the next pay-period; 10/01/10 in violation of this Arizona

27   Revised Statue, therefore in accordance with A.R.S. 23-355 the Plaintiff is due payment of

28   treble damages plus interest for the payment of $439.62 made on 10/01/10.

93.   The Plaintiff/employee was terminated on 09/22/10. 3 working days would have been on 09/27/10.

94.   This claim is supported by the Plaintiff's banking records, the documents from the FOIA Request and payroll information provided by the Defendants/employers payroll service; Breedlove & Assoc.

95.   The Plaintiff demands payment of treble wages of $1,318.86 from the Defendants for violations of A.R.S. 23-353(A) and the Defendants should also pay all back taxes as per A.R.S.43-414.

## SIXTH CAUSE OF ACTION

### (Theft of Services in Arizona)

96.   Plaintiff re-alleges and incorporates all preceding paragraphs 1-95 as if fully stated herein.

97.   Because of the FLSA Statues of Limitations clause only going back 2-years (3-years if willful) from the date this action was filed (06/03/11), the Plaintiff invokes this Theft of Services Statue to recover all 'hourly' wages lost.   Based on the 2-year statue the lost unpaid hourly wages from 04/02/07 thru 06/05/09 in Arizona are 711.5 hours.

98.   The FLSA governs minimum wage/overtime.   The Plaintiff is not claiming either in this allegation.

99.   The Plaintiff is claiming my right of unpaid hourly wages; A.R.S. 13-350(4)(5) over and above the 40 hours I was paid for (salary upon agreement) as service was provided by the Plaintiff/employee at the request and direction of the Defendants/employer as a Domestic Service Worker under the laws of 29 U.S.C. 552.99 (…vital step in ensuring workers…) and 29 U.S.C. 552.100 (Domestic workers shall be paid time and one half over 40 hours per week).

100.   As defined in A.R.S. 13-1801(A)(2)(4)(8)(14)(15) the Defendants exercised control to demand extended hours over and above 40 and without payment as a requirement to keep my job.   Thus depriving the Plaintiff of his lawfully earned wages (A.R.S. 13-350(4)(5). As found in the FOIA Request records, the Defendants when questioned by the Plaintiff on

1   the excess hours would always say and the Plaintiff quotes, "It's not the quantity of hours

2   that matters, it's the quality of work done."—end quote

3   101.   The Defendants knowingly and with intent for their own financial gain have committed

4   Theft of Services against the Plaintiff. A.R.S. 13-1802(A)(3)(6) and A.R.S. 13-350(4)(5).

5   102.   The fair market value of every hour of the Plaintiffs services and labor of unpaid hourly

6   wages worked by the Plaintiff/employee is reached by taking the yearly salary of

7   $42,500.00 and dividing it by 52 weeks and each week by 40 hours as per the

8   Defendants/employers and Plaintiffs/employee original agreement that equals $20.43 per

9   hour. $20.43 is the fair market value and per unpaid hour times the total of 711.5 hours

10   equals $14,536.00.

11   103.   The Plaintiff demands payment of all back wages (unpaid hourly of $14,536.00) with

12   interest, as determined by this court. Plaintiff also demands that the Defendants pay all

13   back taxes and penalties related to the violations of this claim A.R.S.43-414. The Plaintiff

14   also demands any civil penalties, including but not limited to general, punitive and

15   exampulary damages.

### SEVENTH CAUSE OF ACTION

### (Theft of services in Utah)

18   104.   Plaintiff re-alleges and incorporates all preceding paragraphs 1-103 as if fully stated

19   herein.

20   105.   Because of the FLSA Statues of Limitations clause of only going back 2-years (3-years

21   if willful) from the date of this filing (06/06/11), the Plaintiff invokes this Theft of Services

22   Statue to recover all 'hourly' wages lost. Based on the 2-year statue the lost unpaid hourly

23   wages from 04/02/07 thru 06/05/09 in the State of Utah are 67.25 hours.

24   106.   The FLSA governs minimum wage/overtime. The Plaintiff is not claiming either in this

25   allegation.

26   107.   The Plaintiff is claiming my right of unpaid hourly wages, over and above the 40 hours

27   as to the Defendants/employers and the Plaintiff/employee's original agreement. This

28   service was provided by the Plaintiff at the request and direction of the Defendants while

1  the Plaintiff was employed as a non-exempt Domestic Service Worker under the laws of 29

2  U.S.C. 552.99 (…vital step in ensuring workers…) and 29 U.S.C. 100(2)(Domestic workers

3  shall be paid time and one half over 40 hours per week).

4  108.    In accordance with Utah Criminal Code 78B-3-205, this court has jurisdiction.  It states

5  in part; "Any person…whether or not a citizen or resident of this state…effects persons or

6  business within this State…"

7  109.    The Defendants did violate U.C.C. 76-6-409 because the Defendants required the

8  Plaintiff to work on their property and stay until the lists that STEVEN J. HILTON gave the

9  Plaintiff were completed.

10  110.    As defined in U.C.C. 76-6-401(1)(3)(a) and 34-28-2(e), the Defendants knowingly with

11  intent to deprive the Plaintiff of my lawfully earned labor hours to their own economic

12  benefit.

13  111.    As defined in U.C.C. 76-6-401 the Defendants exercised control to demand extended

14  hours over and above 40 and without payment as a requirement for the Plaintiff to keep his

15  job.  Thus, the Defendants have committed Theft of Services in the State of Utah against

16  the Plaintiff. U.C.C. 76-6-401(1)(3)(a)

17  112.    The fair market value of every hour of the Plaintiffs service and labor of unpaid hourly

18  wages worked is reached by taking the yearly salary of $42,500 and dividing it by 52 weeks

19  and each week by 40 hours equal $20.43 as the fair market value and per unpaid hour times

20  67.25 equals $1,374.00.

21  113.    The Plaintiff demands payment of all back wages (unpaid hourly of $1,374.00) with

22  interest, as determined by this court.  Plaintiff also demands that the Defendants pay all

23  back taxes and penalties related to the violation of this claim A.R.S.43-414.  The Plaintiff

24  also demands any civil penalties, included but not limited to general, punitive and

25  exampulary damages.

26  ### EIGHTH CAUSE OF ACTION

27  **(Theft by Extortion in Arizona)**

28

114. Plaintiff re-alleges and incorporates all preceding paragraphs 1-113 as if fully stated herein.

115. On May 1st, 2011 STEVEN J. HILTON sent the Plaintiff an email (Exhibit "O") threatening that if the Plaintiff didn't take his 'settlement offer' from the USDOL he would take the Plaintiff to court for a debt. STEVEN J. HILTON worded this email in a manner to 'suggest' that he and the Plaintiff ended our working agreement 'amicable'…this is not the case.

116. The debt that the Defendant refers to is…not a debt. Defendant suggests that he is willing to forgive it…if the Plaintiff does what the Defendant wants. STEVEN J. HILTON created this 'debt' when he willfully decided not to give the Plaintiff a company vehicle as he had promised thru intentional and a knowing desire to lower our original agreement.

117. The company vehicle was a deciding factor in my decision to work for the Plaintiff. The Plaintiff was driving a brand new; purchased in Nov. '06, 2007 Signature L-series Town Car and would be giving it back to Gene Bearinger for a newer Cadillac ESV. We; STEVEN J. HILTON and myself; the Plaintiff agreed on it before (03/31/07) the Plaintiff/employee worked his first day (04/02/07).

118. Thru this email, STEVEN J. HILTON attempts to assert a false fact in an attempt to prevent the Plaintiff from taking him to Federal Court and subjects the Plaintiff to hatred and ridicule for not paying for this fake loan to those who know the Plaintiff and those who are in need of my skills and talents. A.R.S. 13-1804 (A)(4)(5)(6)

119. Damages are due to the Plaintiff for the actions of the Defendant in creating and intentionally taking and attempting to re-enforce his control for this breach of bad faith and unfair advantage debt.

120. Actual damages will be covered in 'Unlawful Withholding of Wages'. Plaintiff demands that punitive and exampulary damages be awarded as determined by the jury at the end of this trial.

## NINTH CAUSE OF ACTION

### (Fraudulent Schemes-2004 Truck)

Page 17 of 31

121.   Plaintiff re-alleges and incorporates all preceding paragraphs 1-120 as if fully stated herein.

122.   This claim for Fraudulent Schemes is being claimed by the Plaintiff because of the 'threat' in STEVEN J. HILTON'S email; Exhibit "O"; on 05/01/11 in accordance with A.R.S. 13-2310(A)(E)

123.   This email opens the door for the Plaintiff to prove the terms/agreements of the original working agreement (03/31/07) because the Defendant, based his claim to the debt on said agreement.

124.   As to the 'loan agreement'...there is no prior written agreement or release from the Plaintiff/employee for the Defendants/employers to take wages out of my pay. A.R.S. 23-352(2)

125.   The original working agreement was oral and notes were taken by the Plaintiff as to the terms of it. It was done in good faith and sealed with a handshake by STEVEN J. HILTON and the Plaintiff.  Exhibit "A"

126.   STEVEN J. HILTON told the Plaintiff during a phone conversation on 03/26/07, that since the Plaintiff did not own a vehicle and the vehicle the Plaintiff was currently using at ExecuCar was owned and purchased from my client; Mr. Bearinger...that he; the Defendant would buy a Cadillac ESV and it would be my company vehicle.

127.   The Defendants enticed me into the agreement with a promise of trading in my purchased in Nov. 2006; 2007 Signature L Town Car for a new and nicer Cadillac ESV. Once the Plaintiff was committed to the Defendants plan, they changed the game causing injury to the Plaintiff and causing financial stress.

128.   STEVEN J. HILTON knew from the start that he was being deceitful and conning in enticing me with material misrepresentation to accept an offer he had no intention of fulfilling.

129.   The Defendants devised and implemented a plan to begin 'skimming' money from the Plaintiffs wages...before it was reported as wages.  Plaintiff suffered financially in the form of $300-$450/mo loan payments, insurance cost of $108/mo and vehicle maintenance.

130.    The Plaintiff demands penalties to be imposed upon the Defendants.  Penalties to include general damages of $20,000.00 for the amount of the 'fake loan' and punitive damages as awarded by the jury in this trial.  Plaintiff also demands as an exampulary damage that the Defendants be issued a Court-ordered 'Business Prohibition' and the length of which shall be determined by the Court at trials end.

## TENTH CAUSE OF ACTION

### (Aiding And Abetting Tortuous Conduct)

131.    Plaintiff re-alleges and incorporates all preceding paragraphs 1-130 as if fully stated herein.

132.    Plaintiff; ROBERT J. LARGE claims that the Defendant; STEVEN J. HILTON aided and abetted SUZANNE M. HILTON and that STEVEN J. HILTON is therefore liable for the consequences of SUZANNE M. HILTON'S conduct A.R.S. 13-303.

133.    Defendant; SUZANNE M. HILTON engaged in conduct for which she is liable to the Plaintiff; ROBERT J. LARGE.

134.    STEVEN J. HILTON was aware that SUZANNE M. HILTON was going to engage in such conduct, and

135.    STEVEN J. HILTON provided substantial assistance or encouragement to SUZANNE M. HILTON with the intent of promoting the conduct.

136.    STEVEN J. HILTON informed me verbally that him and his wife; SUZANNE M. HILTON were going to start deducting $300/month out of my checks for repayment of 'his loan.'  Exhibit "D".

137.    I received from STEVEN J. HILTON an email on 05/01/11.  This is the only written communication the Plaintiff has ever had as to the confirmation that it was suppose to be $300/mo not $450/mo…and that STEVEN J. HILTON was going to continue making me pay for his 'fake loan.'(A.R.S. 13-204)  The Defendants took $450/mo out of my wages a total of 6 times; as noted in my payroll info in the FOIA Request received 05/23/11. 11/2007: 2nd, 16th, 30th—05/2008: 2nd, 16th, 30th—10/2008: 3rd, 17th, 31st—05/2009: 1st, 15th, 29th—10/2009: 2nd, 16th, 30th—04/2010: 2nd, 16th, 30th.  Attached as Exhibit "O".

138.   The Plaintiff was giving back his 2007 Lincoln Town Car for a brand new Cadillac ESV.  The Defendant and Plaintiff shook hands on this 03/31/07.

139.   The Plaintiff had to accept the terms of the Defendants 'truck loan' to keep his job.

140.   In a hand-delivered draft titled, as Exhibit "B" the Plaintiff states and I quote myself, "I gave up a lot to accept this position.  I was driving a 2007 Town Car that I'll be paying for, for awhile…I quit ExecuCar…I pissed off Gene…you've(the Defendants) got me over a barrel here.  I did not expect car payments, car loans and increased car insurance…"

141.   STEVEN J. HILTON knowingly conspired with his wife; Defendant; SUZANNE M. HILTON to send an email (HILT6801—10/01/07 at 11:03am) (Exhibit "D") to Breedlove and Assoc. Payroll Services(Texas) and have them reduce my yearly gross wages by $150 per pay-period instead of $300/mo.  In doing so, STEVEN J. HILTON broke his promise of a company vehicle & changed my agreed on yearly gross wages.  With his backing and encouragement he had his wife and Defendant SUZANNE M. HILTON send the email that brought the Plaintiff's yearly gross wages down from $42,500 to $38,100.  In this act, both Defendants conspired to commit this offense against the Plaintiff.

142.   The Defendant intentionally and with reckless disregard changed our 'made in good faith agreement' to benefit himself and the Defendants fraudulently concealed the non-exempt status of the Plaintiff (A.R.S. 13-203(B)(2).  Plaintiff has communications that state: "I personally don't need a truck…but as I've mentioned to you…I need one for the HILTON residence."

143.   The Plaintiff was damaged financially by the dishonest deceptions of the Defendants.  Plaintiff was tricked into a working relationship that became very one-sided because of the actions and intentional reckless desires of the Defendants to reap financial rewards at the Plaintiff's expense.

144.   Plaintiff demands penalties to include actual damages of $150 times 6 equals $1,050 and punitive damages to be awarded in the amount of FIVE MILLION DOLLARS ($5,000,000).  Plaintiff also seeks exampulary damages that include a Court ordered business prohibition of the Defendants.

## ELEVENTH CAUSE OF ACTION

### (Fraudulent Schemes-Tax Fraud in Arizona)

145.   Plaintiff re-alleges and incorporates all receding paragraphs 1-144 as if fully stated herein.

146.   Defendants/employers changed the Plaintiffs/employees yearly gross wages from agreed on $42,500/yr to $38,100/yr and in doing so, the Defendants have violated A.R.S. 43-414 (Failure to withhold); A.R.S. 43-416 (Failure to remit) and A.R.S. 43-435 (Failure to collect and pay taxes) on the amount of the Plaintiff's money they kept for themselves.

147.   STEVEN J. HILTON and SUZANNE M. HILTON devised a plan and put it into motion to begin a skimming scheme to avoid paying taxes on the full amount of our agreement.

148.   In Exhibit "J" the FLSA NARRATIVE says, "MR. HILTON substantiates MR LARGE'S salary…(on page 2). On page 1 of said document, under 'EXEMPTIONS' it states: "ROBERT J. LARGE, $42,500/year, a salaried nonexempt employee conducting domestic duties covered by part 552.3 of 29 CFR." "Mr. ROBERT J. (ROBB) LARGE, at the employer's private residences in Scottsdale, Arizona and Park City, Utah. Per 29 CFR 552.3, MR. LARGE was subject to FLSA coverage due to domestic duties including chauffeuring, estate landscaping and home and vehicle maintenance conducted at the employer's residences from April 2, 2007 to September 22, 2010."

149.   The Defendants knowingly and with malice lowered the Plaintiffs gross wages and in doing so, the Defendants/employers concealed money in the form of taxes due to both State and Federal tax departments. Attached as Exhibit "D".

150.   Also, the Plaintiff's unemployment amount was shortened causing the Plaintiff/employee to file for Emergency Extended Benefits because of the deception committed by the Defendants. The Defendants sought personal enrichment through the deliberate misuse of their employer abilities.

151.   Damages are due in the form of corrective pay of the Plaintiff's salary; as per claim "Unlawful Withholding of Wages". Plaintiff demands punitive damages to be awarded in

1   the amount of ONE MILLION DOLLARS ($1,000,000).  Plaintiff demands that these

2   violations; 79 total; average of $4,400/yr from 10/05/07 to 10/01/10 be reported to both

3   State and Federal tax departments for further departmental penalties to be enforced.

4   **TWELVTH CAUSE OF ACTION**

5   **(Fraudulent Schemes-Knowingly Falsifies Info to Governments)**

6   152.    Plaintiff re-alleges and incorporates all preceding paragraphs 1-151 as if fully stated

7   herein.

8   153.    The Defendants/employers of the Plaintiff/employee are in violation of A.R.S. 13-2311

9   to both the State of Arizona and the Federal Government (USDOL).

10   154.    In documents received from the FOIA Request "FLSA NARRATIVE" (there is no date

11   on this 3-page internal document).  STEVEN J. HILTON knowingly falsifies to both

12   governmental agencies of the State of Arizona and the Federal USDOL.  Exhibit "J"

13   155.    In email "Re: Last paycheck 10/06/10" (Exhibit "P") between STEVEN J. HILTON

14   and the Plaintiff, the Defendant tells the Plaintiff, "I am not paying you vacation time." And

15   then in a letter dated 10/15/10 to the Plaintiff by the Arizona Department of Economics

16   Securities, they tell the Plaintiff they are withholding unemployment payments to me

17   because of "due to receipt of such payment…received from STEVEN J. HILTON in the

18   amount of $980.64."  Which I proved in a phone appeal that I the Plaintiff did not receive.

19   The Defendant intentionally lied and deceived the AZDES to benefit himself and cause

20   financial hardship on the Plaintiff.

21   156.    Then in the "FLSA NARRATIVE" to the USDOL, STEVEN J. HILTON tells the

22   USDOL that "…did not agree there had been an agreement for a 40 hour workweek or that

23   MR. LARGE typically worked more than 40 hours in a week."  The Plaintiff has emails and

24   communications between both Defendants; Exhibit "H"; where the Plaintiff expresses his

25   dissatisfaction with working so many hours for free.  In Exhibit "F" an email with

26   Defendant SUZANNE M. HILTON, the Plaintiff states: "I worked just under 111 hours

27   these last 8 days."

28

157.    In an email titled, "Re: Forgetting on 11/16/09, (Exhibit "R")  a communication between the Defendant/employer STEVEN J. HILTON and the Plaintiff/employee, I show that contrary to what the Defendant told the USDOL, that he was quite aware of the hours over and about my 'normal' 40 hour work week.  The Defendant told the USDOL what he wanted them to hear…not the truth in order to cover up the facts.

158.    Plaintiff demands general and punitive damages to be awarded in the amount of ONE MILLION DOLLARS ($1,000,000).  Plaintiff also demands that the Defendants be issued a Court-Ordered business prohibition as an example to others of conduct not to follow.

## THIRTEENTH CAUSE OF ACTION

### (Blacklisting in Arizona)

159.    Plaintiff re-alleges and incorporates all the preceding paragraphs 1-158 as if fully stated herein.

160.    In all the years the Plaintiff worked for the Defendants, I was never written up for anything, nothing was ever broken or stolen while the Plaintiff was taking care of the Defendants homes/properties/vehicles.  Plaintiff always showed the greatest respect for the Defendants and their family/friends and this is how they chose to repay me…by making up fraudulent false sick and mean lies about my character and reputation.

161.    The Defendants used actual malice in that the lie they created was so sick and disgusting that it made sure the Plaintiff would not be hired by Mr. Craig Jackson. A.R.S. 12-653.01.  Attached as Exhibit "S".

162.    The Plaintiff was told via phone conversation that the Jackson's had heard from a connection to STEVEN J. HILTON and SUZANNE M. HILTON that the Plaintiff was not to be trusted and that I had committed a crime against one of the Defendants children.

163.    The exact words repeated back to the Plaintiff on 04/25/11 was, "Robb Large is tainted. He hurt one of Hilton's children and I don't trust him with my son." (Quote from Mr. Craig Jackson as told to the Plaintiff by Mark (and repeated to the Plaintiff)  from the Beverly Hills Office of International Domestic Placements.)

164.    The Plaintiff has NEVER been or will ever be charged with such a sick crime.

165.    The Plaintiff has a signed contract (03/11/11) with International Domestic Placements in regards to employment with Mr. Craig Jackson of Paradise Valley, AZ.  The Plaintiff was told, "You will be his outside and vehicle House Manager and he's going to hire a guy named Gary for the inside and wine/food part."  Attached as Exhibit "Q".

166.    The Defendants committed Blacklisting (A.R.S. 23-1361 (A) by knowingly spreading horrible false lies, on or about April 2011, about the Plaintiff to prevent him from getting the House Manager job with Craig Jackson.  The Defendants knew the lie was a false and defamatory communication and with reckless disregard, used the Plaintiff's name to prevent him from gaining an honest job. A.R.S. 23-1362(A)

167.    Because of the Defendants Blacklisting of the Plaintiff, I was not hired and have suffered emotionally and financially from the viciously sick lies told about me and my character.  The Defendants have totally destroyed my reputation within the community of people who seek my type of skills and talents.  Exhibit "S".

168.    The Plaintiff demands penalties to be awarded in the form of punitive, special (for attacking my reputation) and exampulary damages in the amount of TEN MILLION DOLLARS ($10,000,000).  The Plaintiff also asks the Court to punish the Defendants with an exampulary damage that includes a Court-ordered business prohibition to set an example to others as to all the crimes committed by the Defendants in this action.

### FOURTENTH CAUSE OF ACTION

#### (Defamation by Slander)

169.    The Plaintiff re-alleges and incorporates all preceding paragraphs 1-168 as if fully stated herein.

170.    Thru the actions of the Defendants in Blacklisting the Plaintiff (04/2011) by a knowingly false and defamatory lie about me and then with malice intent creating a lie about the Plaintiff committing crimes against children, the Defendants have violated A.R.S. 13-541.

171.    These horrific statements were told so to keep the Plaintiff from being hired as Mr. Craig Jackson's House Manager. The Defendants knew the statements were false and an intentional lie that would seriously damage the Plaintiffs reputation.

172.    Mr. Jackson believed the horrific lies and chose not to hire the Plaintiff because of the slanderous and mean rumors STEVEN J. HILTON and SUZANNE M. HILTON spread about the character of the Plaintiff. Attached as Exhibit "S".

173.    The Plaintiff has suffered great damage to his reputation and his good name. I have email communications that convey the falseness and slanderous remarks as a grave wrong committed against an innocent person; the Plaintiff. The Plaintiff has suffered and is still searching for a House Manager position in Arizona.

174.    The Plaintiff demands penalties of general, punitive and special damages for the Defendants fraudulently attacking my good name and business reputation and an award of TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000). The Plaintiff also asks the Court to issue a business prohibition against the Defendants for their willingness to commit this act.

## FIFTHTEEN CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

175.    The Defendants conduct and actions were extreme and outrageous in the creation of the sick lies spread about the Plaintiff in attempt to Blacklist him for working for a friend of theirs (attached as Exhibit "S"); and

176.    The Defendants acted with knowledge and intentional meanness that was aimed at preventing the Plaintiff from gaining an honest living; and

177.    The Plaintiff has email communications and witnesses who will testify as to the severe emotional distress that the Plaintiff suffered from learning about the slanderous lies told by the Defendants and losing out on the job with Mr. Craig Jackson and being employed again; and

178.   The Defendants knew that the Plaintiff was susceptible to emotional distress from the many emails/complaints about how STEVEN J. HILTON likes to treat the Plaintiff. Email: RE: About Robb 03/28/07 as Exhibit "T".

179.   STEVEN J. HILTON used his power as the Plaintiffs employer as an ultimate right to cause damage to the Plaintiff and his reputation whenever he desired. Many emails will be submitted that prove this ten-fold.

180.   Thru the course of the Plaintiffs employment with the Defendants and thru the multiply claims within this lawsuit, the Plaintiff has suffered the intentional infliction of the Defendants abusive ways.

181.   From the very beginning of the Plaintiff/employee and Defendants/employers working arrangement, the Defendants used unconscionable means in reckless disregard intentionally to get his own way with no regards to how his actions would affect the Plaintiff, as in email titled, "What Robb did all day Monday…as per your request!!!! 06/02/08.

182.   The ultimate fact of this claim lies within every claim and abuse by the Defendants. In Exhibit "G" the Defendant threatens to fire the Plaintiff for complaining about unsafe working conditions, in effect causing the Plaintiff to suffer in dangerous situations just to keep my job.

183.   The Defendant and Plaintiff's original agreement (03/31/07) was only for his new 22,000 sq.ft. house in Silverleaf at DC Ranch in Scottsdale, AZ but within 6 months the Plaintiff was also required to do: his 2nd home of 6,000 sq.ft and oversee re-construction of his 8,000 sq.ft cabin in Park City, Utah.

184.   All of this is proven with the Plaintiffs payroll records that the Defendants expected this of me at no extra pay or any overtime.

185.   In Exhibit "H" the Plaintiff states to the Defendants, "My salary is based on our agreement. All this other work that was once contractors…I do it because times are tough but in all honestly(sp), I don't get paid for doing it…I get paid for landscaping and detailing. That is what we agreed to mutually. Yet all the angry you have over me not doing my job…is due to work that I do for…free…"

186.   The harder the Plaintiff worked, the more work the Defendants would throw at me. Free labor.  Forced labor.

187.   In Exhibit "L" you see and feel the emotional strain the Plaintiff was under from working for the Defendants.  All the facts will prove the working relationship with the Defendants was very abusive and very one-sided.

188.   In Exhibit "L" STEVEN J. HILTON is quoted, "Furthermore I am very frustrated with your attitude and your continued challenges to my authority (this email)…"  Meaning the Plaintiff complaining about how I am being treated and abused by the works and actions of the Defendant.

189.   The Plaintiff demands penalties to be awarded in the form punitive damages for the actions and results caused by the Defendants.  The amount of which shall be determined by this Court for this action.

### SIXTENTH CAUSE OF ACTION

### (Criminal Liability)

190.   The Plaintiff re-alleges and incorporates all preceding paragraphs 1-189 as if fully stated herein.

191.   The Defendants under this claim are in violation of the aforementioned actions by their own conduct and willingness to forfeit and take advantage of the Plaintiff and all the broken promises made to the Plaintiff.

192.   The fifteen causes of action in this suit are living proof and no other explanation is required to enforce A.R.S. 13-302.  The Defendants here named STEVEN J. HILTON and SUZANNE M. HILTON through their own conduct and each others, are accountable for every action in this claim filed by the Plaintiff; ROBERT J. LARGE.

193.   The Plaintiff demands that penalties be awarded against the Defendants for both their parts in violation of this Statue in the amount to be determined by the jury at trials end. Penalties to include general, punitive and exampulary damages in relationship to the events that have transpired through their own actions.

### JURY DEMAND

194.    Pursuant to Fed. R. Civ. Proc. 38 the Plaintiff hereby demands a trial by Jury of all issues raised in this civil action that are triable of right (or choice) by a jury

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for the following relief:

195.    Plaintiff requests a jury trial;

196.    For unpaid overtime in amount of $19,090.15 as per 29 U.S.C. 216(b) plus interest, attorney fees (if used) and court costs;

197.    For liquidated damages per FLSA equal to unpaid overtime in amount of $19,090.15 plus interest;

198.    For unpaid expenses paid out of pocket in the amount of $7,990.08 as per 29 U.S.C. 778.217;

199.    For treble damages in vacation pay of $2,941.92 plus interest to be awarded for failing to follow the A.R.S. 23-350

200.    For Unlawful Withholding of Wages per A.R.S. 23-352 in the amount of $11,850 plus back interest;

201.    For Failure to Pay Within 3 Days A.R.S. 23-355 amount of treble damages $1,318.86 plus interest;

202.    For Theft of Services in AZ A.R.S. 13-350 in the amount $14,536 plus interest;

203.    For Theft of Services in UT U.C.C. 76-6-401 in the amount $1,374.00 plus interest;

204.    For punitive and examplary damages for Theft by Extortion in AZ to be awarded by the jury;

205.    For Fraudulent Schemes—2004 Truck A.R.S. 13-2310 in the amount $20,000 and other damages as awarded by the jury;

206.    For Aiding and Abetting an Intentional Tort Offense of Conduct A.R.S.13-303 in the amount of $5,000,000.

207.    For Fraudulent Schemes-Tax Fraud A.R.S.43-435 in the amount $1,000,000;

208.    For Fraudulent Schemes-Lying to Government Agencies A.R.S.13-2311 in amount of $1,000,000;

209.    For Blacklist A.R.S.23-1361 with use of Actual Malice A.R.S.12-653.01 in amount of $10,000,000.00;

210.    For Defamation by Slander A.R.S.13-541 in the amount $2,500,000.00;

211.    For punitive damages to be awarded by jury for Intentional Infliction of Emotional Distress;

212.    For general, punitive and exampulary damages to be awarded by jury for Criminal Liability A.R.S.13-302.

213.    For the Defendants to be held accountable for all back taxes on wages and penalties A.R.S.43-414; 43-416; 43-435;

214.    For attorney fees(if used) and court costs;

215.    For any further relief as may be just and proper under the circumstances.


Dated   06/06/2011

Plaintiff Pro Se

Robert J. Large
6331 N. 3rd Street
Phoenix, AZ 85012
Pro Se