**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Large,<br><br>                Plaintiff,<br><br>v.<br><br>Steven Hilton,<br><br>                Defendant. | No. CV-11-1127-PHX-GMS<br><br>**ORDER** |

Defendant Steven Hilton has filed a Motion for Summary Judgment against Plaintiff pro se Robert Large. (Doc. 85.) The Court grants in part and denies in part the Motion for the reasons stated below. Hilton also requests attorneys' fees in his Motion. That request is denied without prejudice. Finally, Hilton filed a Motion to Strike (Doc. 100) a declaration (Doc. 99) filed by Large. That motion is granted.

## FACTUAL BACKGROUND

Hilton employed Large to conduct a variety of household maintenance tasks, landscaping, and automobile detailing for his own home and family. (Doc. 86 ¶¶ 1, 9.)[1] They came to an oral employment agreement. (*Id.* ¶ 3.) As part of their agreement, Hilton advanced $20,000 to Large to purchase a vehicle. (*Id.* ¶ 16.) They agreed that $300 would be withheld from each paycheck until Large paid back the loan in full. (*Id.*) Large and

---

[1] Large did not file a separate statement of facts in his Response in contravention of Local Rule of Civil Procedure 56.1(a). He did, however, include a "Statement of Facts" in his Response, which the Court construes as his separate statement of facts. The citations here are to what appear to be undisputed facts contained Hilton's Separate Statement of Facts (Doc. 86) or the record.

Hilton also agreed that Large would work 40 hours a week, but did not have a set methodology for reporting hours or requesting overtime. (*Id.* ¶¶ 3-4.) Nevertheless, a series of emails between Large and Hilton revealed that Large often worked longer hours, and told Hilton that was the case. (Doc. 87, Ex. A.) Large never received any overtime pay for his work.

The relationship was occasionally testy. On one occasion, when Large emailed Hilton a list of completed tasks and noted that some requested items had not been finished before the end of the day, Hilton responded by writing "Do the items I ask you to do before you leave for the day. Period!" (Doc. 38-1, Ex. E.) On another occasion, Large sent Hilton an email in which he detailed the work he had done that day, mentioned that he did not believe that standing on the ladder without a spotter was safe, and requested that for his safety, someone serve as a spotter the next time he was required to clean the fixtures. (*Id.*, Ex. G). Hilton responded with an email that read, in total, "No one likes a smart ass. Maybe we should discuss ending our relationship tomorrow. I think I am at the end of my rope with your attitude." (*Id.*) On March 21, 2010, Large sent Hilton an email detailing the history of how he was hired, that he had never been paid overtime and had never received a raise, that because he was salaried, he had earned less per hour than the hourly workers who had been hired to help him on a project in Utah, and that he had been asked to do much more than the landscaping, detailing, and driving for which he had originally been hired. (Doc. 38-1, Ex. H.) At some point between the date Large sent this email and October 6, 2010, Hilton fired him.

Upon termination, Large requested overtime pay. (Doc. 86 ¶ 8.) Large admits, however, that he still owed Hilton several thousand dollars for the truck. (*Id.* ¶ 18.) That debt remains unpaid, and Large is still using the truck. Large looked elsewhere for employment, eventually applying to work for Craig Jackson. (*Id.* ¶ 11.) Jackson did not hire Large. (*Id.*) Large claims that Hilton told Jackson that Large "hurt one of the [Hiltons'] children" and that those comments made Jackson worry about Large being around his son. (Doc. 38 ¶ 50.)

After he was fired, Large asked whether Hilton would be paying him for unused vacation so that he could accurately report to the Arizona Department of Economic Security whether he had received such funds. Hilton wrote back "I don't owe you any vacation. Not sure what you're talking about." (Doc. 38-1, Ex. P.) Nevertheless, Hilton reported to the Arizona Department of Economic Security that he paid Large $980.64 in "unused vacation, holiday, sick pay, or . . . severance or dismissal pay," for "the period of 09/23/2010 through 09/30/2010." (*Id.*, Ex. N.) Large claims he never received those funds. Large was denied unemployment insurance as a result. (*Id.*)

At some point, Large brought an action through the United States Department of Labor ("DOL") and rejected a settlement offer from Hilton. (Doc. 38-1, Ex. O.) Large filed a complaint in this Court on June 6, 2011 (Doc. 1), and amended it on November 3, 2011 (Doc. 38). The Court dismissed a number of claims in the First Amended Complaint ("FAC") on April 18, 2012. (Doc. 46.) Hilton moves for summary judgment on all remaining claims and requests attorneys' fees. Large filed a Declaration (Doc. 99) almost one month after this Motion for Summary Judgment became ripe. The declaration appears to set forth facts in opposition to Hilton's Motion for Summary Judgment. Hilton has moved to strike the declaration for failure to comply with the rules. (Doc. 100.)

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). If the moving party

bears the burden of proof on the issue at trial, it must "establish all of the essential elements of the claim or defense for the court to find that [it] is entitled to judgment as a matter of law." *E.E.O.C. v. Cal. Micro Devices Corp.*, 869 F. Supp. 767, 770 (D. Ariz. 1994). Thus, the moving party must affirmatively demonstrate that no reasonable trier of fact could find other than in its favor. *S. Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

"A party opposing a properly supported summary judgment motion must set forth specific facts demonstrating a genuine issue for trial." *Whitaker v. Pima Cnty.*, 640 F. Supp. 2d 1095, 1100 (D. Ariz. 2009). This rule applies equally to pro se litigants, who are given significant leeway in other areas, but "are bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). Mere allegation and speculation are not sufficient to create a factual dispute for purposes of summary judgment. *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (per curiam); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts'").

**B.     Analysis**

    **1.     Motion to Strike**

Large filed a Declaration on November 26, 2012, that contains various factual assertions. (Doc. 99.) This Declaration was not attached to any motion or response to a motion. Indeed, Hilton's Motion for Summary Judgment had been fully briefed for almost a month by that point. If the Declaration was intended to support Large's Response to Hilton's Motion, it was late. The Response, due by October 27, 2012, was filed on October 12. (Doc. 87.) Hilton now moves to strike the Declaration. (Doc. 100.)

Pro se litigants receive the benefit of the doubt on many matters in federal courts. Nevertheless, they "are bound by the rules of procedure." *Ghazali*, 46 F.3d at 54. The Court cannot permit a pro se litigant to disregard the published Federal Rules of Civil Procedure and Local Rules. Large has proffered no reason why he submits the declaration in the first place, and, assuming it was intended to support his Response, why it was filed

so late. Consequently, the Declaration is stricken pursuant to L.R. Civ. 7.2(m). The Court will not consider its contents in deciding this Motion.

### 2. Motion for Summary Judgment

Large's remaining claims are for overtime pay under the Fair Labor Standards Act ("FLSA"), reimbursement of expenses, vacation pay, failure to pay within three days under Ariz. Rev. Stat. § 23-353(A), defamation, blacklisting in violation of Ariz. Rev. Stat. § 23-1362(A), and intentional infliction of emotional distress. Only the claim under § 23-353(A) for failure to pay within three days and the claim for unpaid vacation survive summary judgment.

#### a. FLSA Overtime

A threshold question before addressing Large's claim for overtime pay is whether his employment relationship with Hilton is covered by the FLSA overtime provisions. Coverage attaches when employees are "engaged in commerce or in the production of goods for commerce, or . . . employed in an enterprise engaged in commerce." 29 U.S.C. § 207(a)(1). The courts refer to this as "individual" and "enterprise" coverage. *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 306 n.8 (1985) ("Employment may be covered under the Act pursuant to either 'individual' or 'enterprise' coverage."). The burden of establishing individual or enterprise coverage rests on the employee. *See Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 84 (E.D.N.Y. 2010).

Individual coverage exists if the employee is engaged in commerce. 29 U.S.C. § 203(b) defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."

> Typically, but not exclusively, employees engaged in interstate or foreign commerce include employees in distributing industries, such as wholesaling or retailing, who sell, handle or otherwise work on goods moving in interstate commerce as well as workers who order, receive, pack, ship, or keep records of such goods; clerical and other workers who regularly use the mails, telephone or telegraph for interstate communication; and employees who regularly travel across State lines while working.

29 C.F.R. § 779.103. Persons performing landscaping, detailing, and maintenance duties do not qualify as employees engaged in commerce. *See Lenca v. Laran Enterprises, Inc.*, 388 F. Supp. 782, 784 (N.D. Ill. 1974) (collecting cases finding no FLSA coverage for landscape and maintenance workers). The duties that Large had do not fit within any rational construction of the term "commerce." He cannot therefore claim individual coverage under the FLSA.

The other way to obtain coverage is to be employed by an enterprise engaged in commerce. 29 U.S.C. § 203(s) defines an "enterprise engaged in commerce" as one that, among other things, is run for a common business purpose and has annual gross revenue of $500,000 or greater. *Chao v. A-One Med. Services, Inc.*, 346 F.3d 908, 914 (9th Cir. 2003); 29 U.S.C. § 203(r)(1) ("'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose."). Large, however, was employed by Hilton personally and worked at Hilton's private residences to support his household. He was not furthering a business purpose in any direct way. Enterprise coverage is therefore unavailable.

Large asserts that the U.S. Department of Labor determined he was a covered employee pursuant to 29 C.F.R. § 552.3. (Doc. 38-1, Ex. J.) That section interprets the term "domestic service employee" found in 29 U.S.C. § 213(a)(15), (b)(21) to mean

> services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed. The term includes employees such as cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use.

29 C.F.R. § 552.3. Section 213, however, describes *exemptions* to coverage under the FLSA: "The provisions of section 207 [maximum hour requirements] of this title shall not apply with respect to . . . any employee who is employed in domestic service in a household and who resides in such household." 29 U.S.C. § 213(b)(21). While Large did not reside with Hilton and therefore is not covered by this specific exemption, the Court cannot see how the reference by the Department of Labor to 29 C.F.R. § 552.3

establishes that Large is a covered employee when that regulation applies to exemptions from FLSA coverage.

Because Large has not shown that he is a covered employee under the FLSA, he cannot assert a claim under its provisions. Summary judgment is granted for Hilton on the FLSA overtime claim.

### b. Reimbursement of Expenses

Large seeks reimbursement of expenses he incurred while working for Hilton. He cites 29 C.F.R. § 778.217 as the basis for his claim, but that provision applies to interpretations of the FLSA. The Court has determined that Large's employment was not covered by the FLSA. Nevertheless, the Court will construe his claim to be that he and Hilton, as part of their employment agreement, agreed that Hilton would reimburse Large for his expenses. But there is no evidence that expense reimbursement was part of the employment agreement. Large's own notes from his conversation—which appear to be the only memorialization of their arrangement—do not mention expense reimbursement. (Doc. 38-1, Ex. A.) Because Large has failed to produce any evidence that reimbursement of expenses was part of his employment agreement with Hilton, no breach could occur and summary judgment for Hilton on this claim is appropriate.

### c. Vacation Pay

Employers are liable for wages, including vacation pay "when the employer has a policy or a practice of making such payments." Ariz. Rev. Stat. § 23-350. In Arizona, an employer may stipulate in a contract that vacation time must be used or lost at the termination of employment. Inclusion of such a "use-it-or-lose-it" provision "is legal if the employee knows or should have known of the policy since the policy becomes part of the employment contract." Ariz. Atty. General Op. I80–120 (Jun. 26, 1980). Unless an employee knows or should have known that he was working under a "use-it-or-lose-it" contract, "[i]f the employee is unable to use the leave time for various reasons, he is entitled to compensation for the unused leave time." *Id.*

While there is no direct evidence of an agreement between Large and Hilton

regarding payment of unused vacation, Large has provided sufficient circumstantial evidence to survive summary judgment. He relies on a statement in a letter from the Arizona Department of Economic Security (DES) that informed him he was denied unemployment because Hilton claimed that he paid Large $980.64 "for unused vacation, sick, or holiday leave, or the receipt of severance or dismissal pay, or payment for military accrued leave. . . . [during] the period of 9/23/10 through 9/30/10." (Doc. 38-1, Ex. N.) Large claims to have never received that payment. (*Id.*) The ambiguity in the description of the reason for the $980.64 payment is sufficient to create a genuine issue of material fact as to whether Hilton and Large agreed that Large would receive accrued vacation pay at termination. A reasonable jury could examine the document and conclude that Hilton was trying to have it both ways—claiming to the Department of Economic Security that he paid Large for vacation while not actually paying him.

To refute Large's claim, Hilton cites Large's deposition statement that vacation time "didn't roll over. I couldn't, like hold on to them and take a month off the following year." (Doc. 86-1, Ex. A (Large Dep.) at 81:9-22.) There is, however, a difference between vacation pay not "rolling over" from year to year, such that Large could take lengthy vacations, and reimbursing for accrued vacation time. Accordingly, summary judgment on this claim is inappropriate.

### d. Failure to Pay Wages within Three Days

Large claims that Hilton failed to pay him the wages due within three days of his termination. Ariz. Rev. Stat. § 23-353(A) provides that "[w]hen an employee is discharged from the service of an employer, he shall be paid wages due him within [three] working days or the end of the next regular pay period, whichever is sooner."[2] Section 23-355(A) permits an employee to "recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages."

The Parties agree that Hilton paid Large five days after termination. Hilton claims,

---

[2] The statute has since been amended to allow seven working days to pay those wages. Both parties agree that the relative time period at this time was three days.

however, that § 23-353 is triggered only when wages are not paid out at all. That is incorrect. The violation is that the employer fails to timely pay the wages due, not that the employer fails to pay any wage. *See Crum v. Maricopa Cnty.*, 190 Ariz. 512, 513-14, 950 P.2d 171, 172-73 (Ct. App. 1997) (countenancing a claim under § 23-353(A) "because a portion of [the employee's] pay was mailed five business days after his discharge and not delivered, as statutorily required, within three"). Summary judgment is therefore inappropriate on this claim.

### e. Defamation and Intentional Infliction of Emotional Distress

Large claims that Hilton made defamatory comments about him to a potential employer that also amounted to severe emotional distress. Large describes the alleged conversation in his FAC: "On 04/25/11, the Plaintiff called Mark from I.D.P.G. to inquire about moving forward. Mark called Mr. Craig Jackson [potential employer] and Mr. Jackson told Mark, 'Robb Large is tainted. The Hilton's [sic] say he hurt one of their children and I don't trust him around my son." (Doc. 38 ¶ 50.) Large, however, cannot rely on the allegations contained in his FAC at this stage of the litigation. His complaint was not verified and thus may not be considered an opposing affidavit for purposes of summary judgment. *Cf. Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (allegations in a verified complaint based upon "personal knowledge of admissible evidence" may be used as opposing affidavit under Fed. R. Civ. P. 56). His burden is present specific facts that could lead a jury to believe that such a statement was made.

Hilton has flatly denied making those comments to Jackson. (Doc. 86-2, Ex. B ¶ 5.) More importantly, Jackson also denies speaking with Hilton and states that he chose not to hire Large because a better-qualified candidate emerged. (Doc. 86-3, Ex. C ¶¶ 1-5.) Hilton has offered no contravening evidence outside of the statement in his Complaint. That is insufficient to create a genuine issue of material fact in light of the evidence cited by Hilton. Because both the defamation and intentional infliction of emotional distress claims rest on the alleged statement by Hilton to Jackson, summary judgment on both claims is appropriate in light of the lack of evidence.

### f. Blacklisting

Large asserts that Hilton blacklisted him in violation of Ariz. Rev. Stat. § 23-1361(A).[3] He has produced no evidence that Hilton in fact engaged in such conduct, especially in light of the Court's conclusion with respect to the defamation claim above. In his Response, Large describes some interaction with regard to "racecars" between Jackson, Hilton, and some person named Chris Hines. The Court does not see how that discussion is relevant to a claim for blacklisting. Summary judgment on this claim is appropriate.

### 3. Request for Attorneys' Fees

Hilton includes in his Motion for Summary Judgment a request for attorneys' fees, claiming that Large pressed his case despite having no evidence. Portions of Large's case remain, however, and the Court reserves judgment on the question of attorneys' fees until the conclusion of the case. *See* Ariz. Rev. Stat. §§ 12-349(A), 12-341.01(C). Hilton's request is denied without prejudice.

### CONCLUSION

Summary judgment is appropriate with regard to all claims except the vacation pay and failure to pay within three days claims. That includes the federal statutory claim that was the source of this Court's jurisdiction. The Court has discretion to determine whether to continue exercising supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 638-41 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.") In light of the relatively advanced stages of this case, the Court exercises its discretion to retain jurisdiction over the two remaining claims. Large, though a pro se litigant, must

---

[3] "Blacklist" means any understanding or agreement whereby the names of any person or persons, list of names, descriptions or other means of identification shall be spoken, written, printed or implied for the purpose of being communicated or transmitted between two or more employers of labor, or their bosses, foremen, superintendents, managers, officers or other agents, whereby the laborer is prevented or prohibited from engaging in a useful occupation. Ariz. Rev. Stat. § 23-1361(A)

follow the rules of procedure and did not put forward sufficient evidence to create a genuine issue of material fact for the other claims. The declaration he submitted was untimely and is stricken. Hilton's request for attorneys' fees is likewise is denied at this juncture.

**IT IS THEREFORE ORDERED THAT:**

1. Hilton's Motion for Summary Judgment (Doc. 85) is **granted in part and denied in part**.

2. Hilton's request for attorneys' fees is **denied without prejudice**.

3. Hilton's Motion to Strike (Doc. 100) is **granted**.

Dated this 9th day of January, 2013.

/G. Murray Snow
United States District Judge